UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
EDWIN J. MANSOUR, JR.,

                Plaintiff,              **MEMORANDUM AND ORDER**

     - against -                14-cv-6099 (NRB)

UNITED STATES OF AMERICA,

                Defendant.
------------------------------X
UNITED STATES OF AMERICA,

     - against –                11-cr-612-3 (NRB)

EDWIN J. MANSOUR, JR.,

                Defendant.

------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


## INTRODUCTION

    Edwin J. Mansour, Jr., an inmate at the Federal Medical Center Butner ("FMC Butner"), has filed a _pro se_ motion pursuant to 28 U.S.C. § 2255, to challenge his conviction for bank fraud conspiracy and his sentence, on the constitutional grounds that his guilty plea was involuntary and his counsel ineffective.  He also appears to object to the quality of his medical treatment at FMC Butner.  For the reasons stated below, Mansour's motion is denied.

## I. BACKGROUND[1]

### A.   The Offense

Between 2007 and 2009, defendant Edwin Mansour operated at least two businesses with his co-defendants.  Highway Furniture, Inc., purported to manufacture and sell mattresses, and New York Funding Group, Inc., purported to invest in consumer debt.[2]  The trouble with these companies——and the reason why Mansour is now in prison——is that Highway Furniture did not sell mattresses (or at least none that Mansour helped sell) and New York Funding did not buy consumer debt.  The true purpose of these entities was to defraud banks.

The intended result of Mansour's fraud was to help consumers obtain loans for which they could not legitimately qualify.  A consumer with a bad credit history would pay Mansour's group hundreds of dollars for "credit repair."  Mansour's group would then submit false information regarding the consumer to major credit reporting agencies (Experian and TransUnion) in one of two ways.  Either the conspirators would inform the credit reporting agencies

---

[1] The facts set forth in this section are derived from Mansour's executed plea agreement ("Plea Agr."), ECF No. 89-2; the transcript of Mansour's change of plea ("Plea Tr."), ECF No. 63; the transcript of Mansour's sentencing ("Sent. Tr."), ECF No. 89-6; the judgment against Mansour ("Judg."), ECF No. 77; and other court records.  Except where noted, all ECF citations in this opinion refer to the docket in the criminal case, United States v. Mansour, 11-cr-612-3.

[2] It appears that the conspirators were unsuccessful in perpetrating their fraud through a third business, Exquisite Jewelers Corp.  Exquisite Jewelers was barely mentioned in the Indictment and was not mentioned in Mansour's allocution (see Plea Tr. at 52:12-55:14), so we focus on the allegations involving the other sham businesses, Highway Furniture and New York Funding.

that the consumer was in good standing on a fake line of credit with one of the two businesses, or the conspirators would delete the consumer's real delinquent debt on the pretense that New York Funding had bought the debt and the consumer had paid it.  Once the consumer's credit score improved on the basis of these lies, the consumer would take out a loan on more favorable terms than he otherwise would have received.

Mansour's group executed this fraud thousands of times, and their scheme caused lenders to issue tens of millions of dollars in fraudulently obtained loans, resulting in millions of dollars of losses.

**B.    The Criminal Case**

   **1.    Indictment and Presentment**

In July 2011, a grand jury indicted Mansour and three co-defendants (Edwin Jacquet, Peter Romeo, and Denise Hudson) for conspiracy to commit bank fraud and conspiracy to cause damage to a protected computer.  See Indictment, ECF No. 2.

At Mansour's presentment, the Court (Ellis, M.J.) granted bail and appointed Steven Frankel, Esq., as counsel.  See Form CJA 20, ECF No. 24.  Frankel, an experienced criminal defense attorney, represented Mansour throughout the proceedings in this Court.[3]

---

[3] On appeal, the Court of Appeals appointed Bruce Bryan, Esq., who withdrew pursuant to Anders v. California, 386 U.S. 738 (1967), after representing that he could advance no colorable arguments on Mansour's behalf.  See Mot., United States v. Mansour ("Direct Appeal"), No. 13-1131 (2d Cir. June 19, 2013), ECF No. 31, granted, Order, Direct Appeal (2d Cir. Nov. 4, 2013), ECF No. 55.

### 2. __Plea Agreement__

In October 2012, following extensive discovery and counseled negotiations with the Government, Mansour agreed to plead guilty to Count One of the Indictment, conspiracy to commit bank fraud. See Plea Agr. at 1.

By signing his plea agreement, Mansour stipulated that his range under the Sentencing Guidelines was 51 to 63 months, based on an offense level of 22 and a criminal history category of III.[4] Id. at 3-4. As part of this stipulation, both he and the Government agreed that neither party "w[ould] seek any departure or adjustment pursuant to the Sentencing Guidelines that [wa]s not set forth" in the Plea Agreement. Id. at 4. However, both Mansour and the Government remained free to seek a non-Guidelines sentence based on the factors listed in 18 U.S.C. § 3553(a), and the Government reserved the right to oppose the contemplated "acceptance of responsibility" adjustment based on misconduct between his plea and his sentencing. See id.

Mansour further agreed "to make restitution in the amount of $9,301,438 to the victims of Count One of the Indictment, . . . and that the obligation to make such restitution shall be made a condition of supervised release." Id. at 2.

---

[4] Mansour received his criminal history points for possessing marijuana, criminally possessing a loaded firearm (a felony under New York law), driving while impaired, operating a motor vehicle without a license, and committing the credit repair conspiracy while on probation. See Plea Agr. at 3.

Finally, Mansour abandoned most of his rights to challenge his conviction, either directly or collaterally:

> It is agreed that . . . the defendant will not file a direct appeal, nor bring a collateral challenge, including but not limited to an application under 28 U.S.C. §§ 2255 and/or 2241, nor seek a sentence modification pursuant to 18 U.S.C. § 3582(c), of any sentence within or below the Stipulated Guidelines Range of 51 to 63 months' imprisonment . . . . The defendant also agrees not to appeal any restitution amount that is less than or equal to $9,301,438 . . . .

Id. at 5.[5]

### 3.   **Plea Hearing**

The same day that Mansour executed his plea agreement, he appeared before us to plead guilty.

Mansour reported that he had not received dialysis since the previous day, and that he was feeling "[p]hysically, 60, 70 percent" and "sluggish[]" as a result. See Plea Tr. at 3:9–11, 4:5–14.  Nevertheless, he assured us that he had no "difficulty following [the] conversation," and that none of his medications affected his ability to understand the proceedings. See id. at 3:14–21, 4:15–17.

---

[5] This passage may well bar the present motion, at least insofar as Mansour attacks his conviction and his sentence of incarceration. See Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (treating a similarly worded agreement as an effective waiver of the right to attack a conviction under § 2255).  The Government, however, has not raised this argument, so we deny Mansour's motion solely on the grounds discussed in this opinion.

He also acknowledged that he had received enough time to discuss the charges with counsel, and that he was satisfied with counsel's advice.  See id. at 4:18-23.

Next, we reviewed the charges against him, his full range of potential sentences (up to 30 years), his trial rights, and the terms of his plea agreement:

> THE COURT:  Do you understand that it is part of your plea that you have agreed to make restitution in the sum of $9,301,438?
>
> THE DEFENDANT:  Yes, your Honor.
>
> . . .
>
> THE COURT:  Do you understand that the parties have agreed that neither a downward nor an upward departure from the guidelines range is appropriate, and that if you receive a sentence within or below the guidelines range, that you have waived your right to appeal or otherwise challenge the sentence that you receive?
>
> THE DEFENDANT:  Yes, your Honor.

Id. at 6:6-9, 9:19-25.

Finally, Mansour acknowledged that he was "pleading guilty because [he was] in fact guilty," id. at 10:21-23, and allocuted to the conspiracy described above.  See id. at 11:9-14:14.  We accepted Mansour's plea, briefly discussed Mansour's kidney condition, and set a sentencing date.  See id. at 14:25, 15:19-16:25, 17:6.

4.   **Sentencing**

Two topics dominated Mansour's sentencing in March 2013: an additional fraud that Mansour had committed after pleading guilty to the credit repair conspiracy, and Mansour's chronic medical conditions.

Mansour's post-plea fraud was much simpler than the fraud for which he was convicted.  After Hurricane Sandy struck New York City, Mansour falsely claimed that he lived in a flooded Staten Island neighborhood in order to receive $10,000 in federal disaster relief money.  Sent Tr. at 7:20–23.  Mansour acknowledged that his Hurricane Sandy fraud "was wrong," id. at 7:19, and ascribed his misconduct to a "chaotic" life, physical illness, and financial straits.  See id. at 4:5–7:17, 8:6–8.

Faced with these admissions, counsel focused on Mansour's medical needs, stating, "the only thing that's absolutely legitimate is his disease and the extent to which he is facing a very short life going forward."  Id. at 10:1–3.  Counsel argued that confinement in a prison hospital would work an "additional hardship," in that "his family can't visit and he'll be locked down 24/7," and "the medical facility is tantamount to maximum other than the fact that you are in a hospital as opposed to being in the general population with everyone else."  Id. at 9:1–10.

In response, the Government argued for imprisonment, citing the seriousness of Mansour's offense, Mansour's role in the credit

repair conspiracy ("the intellectual energy behind this fraud"),
and Mansour's "clear failure to accept responsibility," as demon-
strated by his post-plea fraud.  Id. at 10:25–11:23.  The Govern-
ment acknowledged that Mansour's health "present[ed] the Court
with a bit of a harder question," id. at 11:24–25, but suggested
that Mansour would receive better care in prison than on his own.
See id. at 11:24–12:11.

The Government also noted (without objection) that Mansour's
sentencing range had been raised to 70–87 months as a result of
his Hurricane Sandy fraud, which caused him to lose his "acceptance
of responsibility" credits.  See id. at 12:14–20.

Before pronouncing sentence, we took all these considerations
into account:

> THE COURT:  Normally, I would find myself em-
> pathetic to a defendant with a serious medical
> condition.  However, in this case that sym-
> pathy is overborne by Mr. Mansour's staggering
> lack of respect for the legal system. . . .
> [W]hat is ultimately so staggering is that he
> has been absolutely disrespectful of the legal
> system since he was arrested.  He's not been
> appropriately responsive to Pretrial, to his
> probation officer, and now with his latest
> stunt of stealing $10,000 by submitting a
> phony FEMA claim when there is a limited
> amount of FEMA money and people who
> gen[uine]ly qualified for it.
>
> There might be more sympathy for Mr. Mansour
> if placing him in jail actually was more dis-
> ruptive of his life but it really won't be.
> He doesn't have verifiable or sustained em-
> ployment.  He really doesn't have stable
> housing.  And the fact is that his medical

8

> condition can be dealt with in a Bureau of Prisons medical facility. It is even conceivable that living in a hospital setting will be to his benefit. I am not sending him to jail for that, but the fact is that given his living circumstances I am not concerned about placing him in jail.
>
> So as I said, normally, his medical condition would have resulted in a reduction of his sentence from the Guidelines and I am going to give him, shall we say, credit for that medical condition by not working from the enhanced Guidelines based on his lack of acceptance of responsibility . . . . And in deciding what sentence he should get I am very conscious of the other sentences that I've imposed and feel the importance of proportionality.[6]

Id. at 13:2–14:8.

In light of these considerations, we sentenced Mansour to 51 months of imprisonment, 19 months below the bottom of his calculated Guidelines range, and at the bottom of his plea agreement's stipulated range. Id. at 14:9–10; Judg. at 2. In compliance with Title 18, section 3663A(c)(1) (mandating restitution in all sentencing proceedings involving an offense against property), we also ordered $9,301,538 in restitution and set Mansour's payment schedule to be "ten percent of his gross monthly income upon release from custody." Sent. Tr. at 14:11, 17:11–12; Judg. at 6 ("monthly installments of 10% of gross monthly income over a period

---

[6] Jacquet had been sentenced to 63 months of imprisonment, relative to a Guidelines range of 63 to 78 months. Hudson had been sentenced to 30 months of imprisonment, relative to a Guidelines range of 121 to 151 months. Robert Pierce, a cooperator who was charged separately (No. 11 Cr. 636), was later sentenced to 6 months of home confinement.

of supervision to commence 30 days after the release from cus-
tody").

### 5.  Subsequent Proceedings

The Second Circuit denied Mansour's appeal.  See Mandate,
Dec. 10, 2013, ECF No. 84, and his conviction became final in March
2014, when his time to petition for certiorari expired.  See Clay
v. United States, 537 U.S. 522, 525 (2003).

In July 2014, Mansour timely filed the present motion chal-
lenging both his order of restitution and his incarceration.  The
Government filed its opposition on October 27, 2014, and the motion
was fully briefed on November 26, 2014, when Mansour failed to
submit a timely response.  See Order, Aug. 14, 2014, ECF No. 87.

## II. DISCUSSION

Mansour advances four arguments in his present motion:[7]

(1)  Mansour's guilty plea was involuntary and unknowing (in
     the Due Process sense) because he did not adequately
     understand his restitution obligations.

(2)  Counsel provided ineffective assistance by failing to
     provide full advice regarding restitution before Mansour
     entered his guilty plea.

---

[7] As a basis for some of these claims, Mansour asserts that he will be required
to repay his entire $9 million restitution obligation within the period of his
supervised release, and that failure to pay the entire amount during his
supervised release would constitute a violation.  This assumption is inaccurate.
As ordered at sentencing, he is required to pay ten percent of his gross monthly
income.

(3) Counsel provided ineffective assistance by failing to argue for a downward departure based on Mansour's medical condition.

(4) FMC Butner has provided Mansour with inadequate medical care.

We examine each of these arguments in turn, after addressing the threshold question of whether we have jurisdiction to hear a challenge to Mansour's order of restitution.

A.   <u>JURISDICTION OVER A CHALLENGE TO RESTITUTION</u>

Section 2255 does not grant us jurisdiction to hear collateral challenges to non-custodial sentences, such as restitution.   <u>See</u> <u>Kaminski v. United States</u>, 339 F.3d 84 (2d Cir. 2003).   Although it is conceivable that an especially onerous restitution order could constitute "a restraint on the liberty of a petitioner as to amount to custody," 339 F.3d at 89, this theoretical possibility does not arise in this case.   Mansour's restitution requirement, like the one in <u>Kaminski</u>, is limited to ten percent of his monthly income, so it "plainly does not come close" to constituting "custody."   339 F.3d at 87.

Nevertheless, we will follow other courts in this Circuit in holding that a defendant may challenge a restitution order by petitioning for the common law writ of error coram nobis.   <u>See</u> <u>Carnesi v. United States</u>, 933 F. Supp. 2d 388, 394 (E.D.N.Y. 2013)

(vacating restitution order when the sentencing court had erroneously delegated loss calculations to Probation Office); Ewan v. United States, No. 11-cv-6254 (FB), 2012 WL 3646741 at *2, 2012 U.S. Dist. LEXIS 120073 at *3-5 (E.D.N.Y. Aug. 23, 2012) (vacating restitution that had been based on uncharged conduct); see also United States v. Morgan, 346 U.S. 502, 506, 511 (1954) (authorizing a petition for coram nobis brought by a convict whose federal term of incarceration had expired); Kaminski, 339 F.3d at 89-90 (opinion of Calabresi, J.) (suggesting availability of coram nobis to challenge restitution).

Thus, insofar as Mansour's pro se petition challenges his restitution obligations, we will construe his motion as a petition for coram nobis.  See Carnesi, 933 F. Supp. 2d at 394; Grant v. Lantz, No. 3:05-cv-1756 (MRK), 2006 WL 1662896 at *3-4, U.S. Dist. LEXIS 39322 at *10-13 (D. Conn. June 1, 2006) (citing Kandiel v. United States, 964 F.2d 794, 796 (6th Cir. 1992)).

In evaluating this recharacterized petition, we are mindful that "[c]oram nobis is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996).  While Mansour's ongoing restitution obligation and his timely filing entitle him to petition, only a

showing of "circumstances compelling such an action to achieve justice," id. at 79, will entitle him to the writ.

**B.   PLEA**

### 1.   Mansour Forfeited His Due Process Argument by Failing to Raise It on Direct Appeal.

The Government argues that Mansour failed to make his present arguments on direct appeal,[8] and thereby forfeited his right to collaterally challenge his Due Process argument.[9]

Indeed, Mansour failed to raise any arguments on direct appeal. His only submission (aside from his attorneys' motions to withdraw) was a letter asking the Clerk of Court whether the court had issued a ruling. See Letter, Direct Appeal, Oct. 24, 2013, ECF No. 51.

The fact that appellate counsel declined to present a Due Process argument does not imply that counsel was ineffective, and therefore does not preserve the argument. If appellate counsel's view that Mansour lacked colorable appellate arguments had been objectively unreasonable, then the Circuit would not have granted his motion to withdraw. See Fernandez v. United States, No. 08-cv-8243 (HB), 2010 WL 1491634 at *2-4 (S.D.N.Y. Apr. 14, 2010)

---

[8] Indeed, Mansour failed to raise any arguments on direct appeal. Mansour's only submission (aside from his attorneys' motions to withdraw) was a letter asking the Clerk of Court whether the court had issued a ruling. See Letter, Direct Appeal, Oct. 24, 2013, ECF No. 51.
[9] The Government does not argue that Mansour has forfeited his ineffective assistance arguments, and rightly so. A convicted defendant may assert ineffective assistance of counsel in a collateral proceeding, regardless of whether he raised the claim on direct appeal. See Massaro v. United States, 538 U.S. 500 (2003).

(denying claim that appellate counsel who withdrew under Anders was ineffective); cf. United States v. 777 Greene Ave., 609 F.3d 94, 99 (2d Cir. 2010) ("We will not grant an Anders motion unless we are satisfied that 'counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal,' and that counsel's characterization of the appeal as 'frivolous is, in fact, legally correct.'") (quoting United States v. Burnett, 989 F.2d 100, 104 (2d Cir. 1993)).

### 2. Mansour's Plea Was Voluntary, Knowing, and Intelligent.

Even if Mansour's Due Process argument were not procedurally barred, it would still fail on the merits.

The Due Process Clause requires that a guilty plea be voluntary, knowing and intelligent. See, e.g., Bousley v. United States, 523 U.S. 614, 618 (1998) (citing Brady v. United States, 397 U.S. 742, 748 (1970)). Under this standard, "a plea is deemed 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1998). "[S]tatements made at plea allocutions 'carry a strong presumption of verity' and 'constitute a formidable barrier

in any subsequent collateral proceeding.'" <u>Singh v. Kuhlmann</u>, No. 94-cv-2213 (DLC) (AJP), 1995 WL 870113 at *7, 1995 U.S. Dist. LEXIS 21827 at *21 (S.D.N.Y. Aug. 25, 1995) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)), <u>report and recommendation adopted</u>, 1996 WL 337283, 1996 U.S. Dist. LEXIS 8415 (S.D.N.Y. June 19, 1996); <u>see also</u> <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1100-01 (2d Cir. 1992) (no evidentiary hearing required on motion to withdraw plea when defendant had "stated unequivocally that he had read the cooperation agreement and was familiar with its content").

It is clear from the record that Mansour's plea was voluntary, knowing, and intelligent.  The plea was voluntary, in that Mansour was of sound mind, could follow his colloquy with the Court, and was under no compulsion to plead.  <u>See</u> Plea Tr. at 4:15-23, 9:1-25.  The plea was knowing and intelligent, in that he expressed satisfaction with counsel's advice, and in that he specifically acknowledged "agree[ing] to make restitution in the sum of $9,301,438."  Plea Tr. at 4:18-23, 6:6-9.  Under these circumstances, there is no reason——much less any compelling reason——to abate any aspect of Mansour's conviction or sentence.

### 3.   <u>Mansour Was Not Prejudiced by Counsel's Pre-Plea Advice.</u>

To support a claim of ineffective assistance, Mansour must show that counsel's representation "fell below an objective standard of reasonableness" and that "deficiencies in counsel's

performance [were] prejudicial to the defense." Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). We deny Mansour's petition on the grounds that counsel's ostensible failure to advise Mansour of his restitution obligations cannot have prejudiced Mansour's defense.[10]

Even if counsel failed to explain the material terms of Mansour's restitution, Mansour had two separate opportunities to learn of his restitution before he pled guilty. First, the Plea Agreement, which Mansour signed, adequately explained (1) that Mansour would owe restitution, (2) the amount of restitution, and (3) that payment of restitution would be part of Mansour's supervised release conditions. Plea Agr. at 2. Second, Mansour specifically acknowledged when he entered his guilty plea "that [he has] agreed to make restitution in the sum of $9,301,438." Plea Tr. at 6:6-9.

Under these circumstances, we cannot credit Mansour's argument that he would have elected a trial but for his attorney's supposed omissions. Mansour had ample opportunities to back away from his plea agreement. Mansour's decision to enter a plea despite these warnings demonstrates that the prospect of a large restitution order was not enough to dissuade Mansour from pleading.

---

[10] In deciding Mansour's petition on this basis, we do not mean to suggest that counsel actually failed to explain Mansour's restitution to him or that counsel's performance fell below professional standards in any way. We have no record of Mansour's discussions with counsel, and, given the evident lack of prejudice, have no need to create such a record.

See, e.g., Hill v. United States, No. 13-cv-1107 (LAP), 2014 WL 104565 at *9, 2014 U.S. Dist. LEXIS 4564 at *24-27 (S.D.N.Y. Jan. 7, 2014) (denying ineffective assistance claim when defendant was warned of plea consequences during plea colloquy); Marte v. United States, 952 F. Supp. 2d 537, 540-41 (S.D.N.Y. 2013) (same); United States v. Akwaboa, No. 11-cr-57 (NRB), 2013 WL 625038 at *2, 2013 U.S. Dist. LEXIS 23991 at *5-6 (S.D.N.Y. Feb. 15, 2013).

**C.   SENTENCING**

Mansour next complains that counsel was ineffective at sentencing for failing to seek a downward departure under the Sentencing Guidelines on account of Mansour's kidney disease.  This claim fails both of Strickland's prongs.  Counsel's performance at sentencing was objectively reasonable, and Mansour was in no way prejudiced by counsel's decision not to seek a downward departure.

**1.   Mansour Received Effective Assistance at Sentencing.**

First, we conclude that counsel provided the Court with an effective argument on Mansour's behalf.

Mansour is simply incorrect that his counsel failed to alert the Court to Mansour's medical conditions.  To the contrary, Mansour's medical conditions were the centerpiece of counsel's argument.  In both his sentencing memorandum and his oral presentation at sentencing, counsel argued vigorously that the Court should take Mansour's dialysis treatments into account in as-

sessing the section 3553(a) factors, and even suggested home con-
finement as an alternative to incarceration.  <u>See</u> Sent. Tr. at 9–
10; Def.'s Sent. Mem. at 1, ECF No. 75.

It is true, as Mansour points out, that counsel structured
his argument around the § 3553(a) sentencing factors instead of
the Sentencing Guidelines.  But counsel had no other practical
choice than to argue the statutory sentencing factors, because
Mansour's plea agreement forbade Mansour from seeking a downward
departure pursuant to the Guidelines.  Had Mansour lost the benefit
of his plea agreement, he would have faced a Guidelines range of
188 to 235 months (even assuming no enhancement for his leadership
role).[11]  <u>See</u> <u>Rainford v. United States</u>, No. 05-cv-9895, 2006 WL
2521398 at *6, 2006 U.S. Dist. LEXIS 62218 at *15–16 (S.D.N.Y.
Aug. 30, 2006) (counsel not ineffective for declining to breach
plea agreement); <u>Harris v. United States</u>, 380 F. Supp. 2d 278, 284
(S.D.N.Y. 2005) (same).

Furthermore, this would have been a reasonable choice even
without the constraints of the plea agreement, because a competent
advocate may expect his client's sentence to be based as much or
more on the "nature and circumstances of the offense and the his-
tory and characteristics of the defendant," 18 U.S.C. § 3553(a)(1),

---

[11] <u>See</u> U.S.S.G. §§ ,2B1.1(a)(2) (base level of 6 for Count 2), (b)(1)(K) (+20
enhancement for loss greater than $7.5 million), (2)(B) (+4 enhancement for 50
or more victims), (17)(A)(ii) (+4 enhancement for conviction under 18 U.S.C.
§ 1030(a)(5)(A) on Count 2), and ch. 5 pt. A (sentencing table) (2011).

than on the technical results of a post-departure Guidelines cal-culation.  In this case in particular, counsel may have reasonably believed that his presentation was the best way to offset bad facts (Mansour's charged offense and his post-plea fraud against federal disaster relief) with good facts (Mansour's medical conditions).  See Primo v. United States, No. 07-cv-3387 (CPS), 2008 WL 428449 at *3, 2008 U.S. Dist. LEXIS at *7-11 (E.D.N.Y. Feb. 14, 2008) (counsel not ineffective for decision to present family circum-stances within briefing on § 3553(a) factors).

In any case, counsel's performance, viewed as a whole and in light of the constraints in Mansour's plea agreement, was plainly not objectively unreasonable.

### 2.   Mansour Was Not Prejudiced by Counsel's Performance at Sentencing.

Mansour also could not have been prejudiced by counsel's de-cision to rely on section 3553.  The concept of prejudice presup-poses that some alternative course of action was available to counsel.  Here, Mansour's valid and binding plea agreement left counsel with no practical choice other than to argue on the basis of section 3553.  Thus, Mansour cannot have suffered any prejudice.

Mansour also cannot demonstrate that his sentence would have been any lighter but for counsel's strategy.  Id.  In formulating a sentence, we took defendant's condition fully into account, but still concluded that a significant sentence of incarceration was

appropriate in light of Mansour's disrespect for the law and failure to accept responsibility.

### D. <u>CONDITIONS OF CONFINEMENT</u>

To the extent that Mansour's motion may be read to complain that the Bureau of Prisons has failed to render adequate medical care, Mansour's motion "does not relate to his sentence but [is] directed to the conditions of his confinement——specifically, the inadequate medical care he receives while in custody." <u>Reyes v. United States</u>, No. 07-cv-10943 (SAS), 2009 WL 274482 at *6, 2009 U.S. Dist. LEXIS 7943 at *19 (S.D.N.Y. Feb. 3, 2009). Therefore, the proper vehicle would be a petition under section 2241. <u>See Corrao v. United States</u>, 152 F.3d 188, 191 (2d Cir. 1998); <u>Kingsley v. Bureau of Prisons</u>, 937 F.2d 26, 30 n.5 (2d Cir. 1991); <u>McEwan v. United States</u>, 279 F. Supp. 2d 462, 465 (S.D.N.Y. 2003).

Because Mansour comes to us <u>pro se</u>, we would liberally construe his motion as a petition under section 2241, except that we have no power to issue a writ against the warden of Mansour's present facility in North Carolina. <u>See</u> 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."). Thus we deny his motion as it pertains to his current conditions, without prejudice to a section 2241 petition filed in the proper district.

### CONCLUSION

For the foregoing reasons, Mansour's motion is:

- recharacterized as a petition for a writ of error coram nobis and **DENIED** on that basis with respect to his restitution;

- **DENIED** with respect to his sentence of incarceration; and

- **DENIED** without prejudice with respect to his current conditions of confinement.

The Clerk is directed to close the civil case and to enter judgment.

As Mansour has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**IT IS SO ORDERED.**

Dated:     New York, New York
           April _8_, 2015

                                   _____
                                   NAOMI REICE BUCHWALD
                                   UNITED STATES DISTRICT JUDGE

21

Copies of this Memorandum and Order have been mailed on this date to the following:

### Section 2255 Movant:
Edwin Mansour 65452-054
FMC BUTNER
Federal Medical Center
P.O. Box 1600
Butner, NC 27509

### Counsel for the Government:
Sidhardha Kamaraju, Esq.
U.S. Attorney's Office
1 St. Andrew's Plaza
New York, NY 10007